# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ANDREW KAPPES,

                **Plaintiff,**

       v.                                             Case No. 19-CV-597

ANDREW M. SAUL,
**Commissioner of the Social Security Administration,**

                **Defendant.**

## DECISION AND ORDER

**1. Introduction**

Plaintiff Andrew Kappes alleges he has been disabled since January 1, 2000 (Tr. 9), and, therefore, seeks supplemental security income. After his application was denied initially (Tr. 92-102) and upon reconsideration (Tr. 104-15), a hearing was held before an administrative law judge (ALJ) on February 23, 2018 (Tr. 35-61). On July 30, 2018, the ALJ issued a written decision concluding that Kappes was not disabled. (Tr. 9-18.) After the Appeals Council denied Kappes's request for review on March 20, 2019 (Tr. 1-4), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 6), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 416.920(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). The ALJ found that Kappes "has not engaged in substantial gainful activity since April 6, 2015, the application date[.]" (Tr. 11.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.922(a). The ALJ concluded that Kappes has the following severe impairments: "seizure disorder, dizziness, history of head trauma, anxiety and depression[.]" (Tr. 11.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 416.909, the claimant is disabled. 20 C.F.R. § 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set

forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 416.920(e). The ALJ found that Kappes "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" (Tr. 12.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 416.945(a). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Kappes has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Kappes] can never climb ladders, ropes or scaffolds. He must avoid unprotected heights and commercial driving. [Kappes] is capable of understanding, remembering and carrying out simple tasks and job instructions. He can have no interaction with the general public.

(Tr. 13.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.960. Kappes's past relevant work was as a material handler. (Tr. 17.) The ALJ concluded that Kappes "is unable to perform any past relevant work[.]" (*Id.*)

3

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c). At this step, the ALJ concluded that "there are jobs that exist in significant numbers in the national economy that [Kappes] can perform[.]" (Tr. 17.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Kappes's age, education, work experience, and residual function capacity could perform the requirements of a cleaner, kitchen helper, and hand packager. (Tr. 18.) After finding that Kappes could perform work in the national economy, the ALJ concluded that Kappes was not disabled. (*Id.*)

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex*

*rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder*, 529 F.3d at 413).

4. **Analysis**

Kappes's only argument on appeal is that the ALJ did not properly address the opinion of consultative examiner Dr. Marc Zylstra, who performed a mental status evaluation of Kappes on January 6, 2016, and wrote a psychological report about his findings (Tr. 580-87). In his report Dr. Zylstra opined:

> [Kappes] may have some difficulties functioning effectively in a work environment because of psychological issues. Because of his personality disorder and related maladaptive traits he may find it difficult to interact appropriately with others and to deal with stressors in an effective manner. Additionally, his anxiety issues may make it difficult for him to adequately deal with the stressors in the work place.

(Tr. 586.) Dr. Zylstra diagnosed Kappes with generalized anxiety disorder; personality disorder, NOS with antisocial traits; adjustment disorder with depressed mood; and alcohol use disorder and cocaine use disorder in sustained remission. (*Id.*) In terms of work capacity Dr. Zylstra opined:

> [Kappes] is judged to have mild limitations in his ability to understand, remember, and carry out simple instructions; moderate limitations in his ability to respond appropriately to supervisors and coworkers; mild-to-moderate limitations in his ability to maintain concentration, attention, and work pace; and moderate to marked limitations in his ability to withstand routine work stress and adapt to changes.

5

(*Id.*)

> The ALJ gave Dr. Zylstra's opinion "some weight" and then stated:
>
> The undersigned affords more weight to the State agency consultants' assessments, as they are consistent with the evidence of record. [Kappes] continues to suffer from anxiety and some panic. He does not appear particularly depressed upon examination, but he exhibits difficulty sustaining eye contact and a restricted affect, which is consistent with persistent anxiety. He reports difficulty in large crowds. The evidence establishes that he must avoid all interaction with the general public. Considering the testimony and the treatment notes, the undersigned finds that he is capable of understanding, remembering and carrying out simple tasks and job instructions.

(Tr. 16 (internal citations omitted).)

"As a general rule, an ALJ is not required to credit the agency's examining physician in the face of a contrary opinion from a later reviewer or other compelling evidence." *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014). But, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) (citing *Moore v. Barnhart*, 278 F.3d 920, 924 (9th Cir. 2002)). Nevertheless, "rejecting or discounting the opinion of the agency's own examining physician that the claimant is disabled … can be expected to cause a reviewing court to take notice and await a good explanation for this unusual step." *Beardsley*, 758 F.3d at 839. And an examining medical source's opinion is generally given more weight than a non-examining medical source. 20 C.F.R. § 416.927(c)(1).

Kappes argues that the ALJ provides only a one-sentence explanation for giving Dr. Zylstra's opinion less weight and also fails to "address Dr. Zylstra's specific concern regarding Mr. Kappes' ability to persist under routine work stress." (ECF No. 14 at 11-12.) In response, the Commissioner argues that the ALJ dedicated an entire paragraph to comparing Dr. Zylstra's opinion with the State agency consultants' opinions. (ECF No. 20 at 6.) The Commissioner contends that it was reasonable for the ALJ to give more weight to the consultants, and says that Kappes's reading of the ALJ's decision is "myopic" or "nitpicking." (*Id.* at 7-9.) In reply, Kappes argues that "[t]hese efforts [by the Commissioner] to divine the ALJ's intentions, and invent an explanation that the ALJ failed to imagine or memorialize, violate the *Chenery* doctrine," and the ALJ's error was not harmless. (ECF No. 23 at 2, 8-9.)

Earlier in her decision the ALJ summarized Dr. Zylstra's findings:

[Kappes] underwent a consultative examination to assess his psychological limitations in January of 2016. [Kappes] complained of epilepsy, depression and anxiety. Upon examination, he did not appear significantly depressed. The examiner [Dr. Zylstra] concluded that [Kappes] may have difficulty interacting with others and dealing with stressors. The examiner opined that [Kappes] has mild limitations in his ability to understand, remember and carry out simple instructions and moderate limitations in his ability to respond appropriately to others. He has mild to moderate limitations in sustaining concentration and moderate to marked limitations in his ability to withstand routine work stress and adapt to changes.

(Tr. 14-15 (internal citations omitted).) Addressing one of Dr. Zylstra's findings, the RFC limits Kappes to "no interaction with the general public." (Tr. 13.) And although the RFC also states that Kappes is "capable of understanding, remembering and carrying out

7

simple tasks and job instructions," (*id.*), Dr. Zylstra found only a *mild* limitation in this area. A finding by Dr. Zylstra that Kappes has a mild limitation in this area is not inconsistent with the ALJ's finding that Kappes is capable of understanding, remembering and carrying out simple tasks and job instructions. *See Schmidt v. Astrue*, 496 F.3d 833, 844 (7th Cir. 2007) (finding that substantial evidence supported the mental RFC assessment of an ALJ who found a claimant with "only mild limitations in daily activities and social functioning, and no episodes of decompensation" to "not have any further work-related limitations due to her mental impairments" and whose "mental findings nearly mirror[ed] [a treating medical source's] findings in his treatment notes" with the exception of one statement); *Sawyer v. Colvin*, 512 F. App'x 603, 611 (7th Cir. 2013) ("[A] mild, or even a moderate, limitation in an area of mental functioning 'does not prevent an individual from functioning "satisfactorily."'") (quoting *Roberson v. Astrue*, 481 F.3d 1020, 1024 (8th Cir. 2007)). So the RFC and Dr. Zylstra's opinions are not necessarily in tension with each other.

Nevertheless, it appears that not all of Dr. Zylstra's findings were included in the RFC assessment. The ALJ never explained which of Dr. Zylstra's opinions she disagreed with or why she discounted them. *See Spicher v. Berryhill*, 898 F.3d 754, 757-58 (7th Cir. 2018) ("The ALJ is not required to adopt the recommendations of an examining physician. But when a physician provides significant evidence that cuts against the conclusion reached by the ALJ, the ALJ must provide enough analysis to allow a re-viewing [sic]

court some idea of why she rejected it.") (citing *Clifford v. Apfel*, 227 F.3d 863, 873-74 (7th Cir. 2000)). While it is possible to figure this out by comparing Dr. Zylstra's limitations with the RFC assessment—as the RFC assessment does not address all of Dr. Zylstra's concerns—it is the ALJ's role to explain herself and support her conclusions with substantial evidence and not the role of the reviewing court to piece together the ALJ's findings or reasoning.

Accordingly, on remand, the ALJ shall reevaluate Dr. Zylstra's opinions in light of the relevant evidence in the record. If the ALJ decides that Dr. Zylstra's opinions are not entitled to more weight, she shall give "good reasons" supported by the record for discounting them.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. §405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of April, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge